# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JODY LEE DAVIS,<br><br>    Defendant. | Case No. CR15-2028<br><br>ORDER FOR PRETRIAL DETENTION |

On the 21st day of September, 2015, this matter came on for hearing on the Defendant's Motion for Detention Hearing (docket number 32) filed by the Defendant on September 14, 2015. The Government was represented by Special Assistant United States Attorney Erin R. Eldridge. The Defendant appeared personally and was represented by his attorney, Leslie E. Stokke.

## I. RELEVANT FACTS AND PROCEEDINGS

On July 29, 2015, Defendant Jody Lee Davis was charged by Indictment (docket number 3) with conspiracy to manufacture methamphetamine (Count 1) and attempted manufacture and aiding and abetting the attempted manufacture of methamphetamine (Count 2). At the arraignment on July 31, 2015, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on September 28, 2015. At Defendants'[1] request, trial was rescheduled on November 9, 2015. Defendant waived his right to a detention hearing, subject to his ability to request and receive a prompt hearing at a later time. On September 14, Defendant asked for a detention hearing, and a hearing was scheduled on September 21.

---

[1] Co-Defendant Lisa Ann Davis joined in the request on August 25, 2015. *See* docket number 27.

Delaware County Deputy Sheriff Travis Hemesath testified regarding the circumstances underlying the instant charges. According to Hemesath, he was contacted by Defendant's state probation officer, who reported that Defendant had been "dropping dirty UAs." During his subsequent investigation, Hemesath learned that Defendant and his wife, co-Defendant Lisa Ann Davis, were purchasing methamphetamine precursors at the Walmart store in Anamosa.[2] A search of "pseudo logs" revealed that both defendants purchased substantial amounts of pseudoephedrine, a precursor for the manufacture of methamphetamine.

On June 20, 2015, authorities executed a state search warrant at Defendants' residence in Hopkinton. After a 15-second "knock-and-announce," officers entered the home and found Lisa Davis at the sink in the kitchen with the water running and her hands wet. Numerous items consistent with the manufacture of methamphetamine were found nearby. Officers also found items consistent with the manufacture of methamphetamine in the bathroom and in the garage. A white powdery residue found on a pie dish later tested positive for methamphetamine.

According to the pretrial services report, Defendant is 46 years old. He has lived in eastern Iowa all of his life. Defendant married co-Defendant Lisa Ann Davis in 2003. He was previously married from 1998 to 1999. Defendant told the pretrial services officer that he has no children, but Defendant's mother reported that he has a 20-year-old daughter from his first marriage, but that he "signed away" his parental rights in order to avoid paying child support.

---

[2] It was also discovered that Defendant was engaged in other criminal activity, such as stealing items from the store and then making a "no receipt return" for cash. It is also alleged that Defendant purchased Coleman fuel from Walmart, removed the fuel, and then returned the containers containing only water.

Prior to his arrest on June 20, 2015, Defendant was living with Lisa Davis in Hopkinton. Defendant reported that if he is released he would reside either with his brother-in-law (Lisa Davis' brother) or his mother. His mother told the pretrial services officer, however, that she is on a fixed income and she "can't afford" to allow Defendant to live with her. It was also established that Defendant's brother-in-law lives in the same apartment complex as Lisa Davis. As part of her release, the Court order Lisa Davis to have no contact with Defendant.

Defendant has been unemployed since May 2015. He held several jobs during the past few years. Defendant takes medication for high blood pressure and also suffers from "serious sinus problems." He denied any history of mental illness. Defendant admitted using marijuana once at age 19, but claimed that he had not used any kind of illegal controlled substance since that time.

Defendant's criminal record begins in 1996, at age 27, when he was convicted of interference with official acts and public intoxication. In 2001, Defendant was charged with manufacturing methamphetamine. While that charge was pending, Defendant was arrested again for manufacturing methamphetamine. While those charges were pending, Defendant was charged and convicted of interference with official acts, when he provided false identification information to police officers. In May 2003, Defendant received suspended 10-year prison terms on each of the drug charges.

In December 2003, while on probation for the two drug charges, Defendant was charged with conspiracy to deliver methamphetamine. Defendant received a five-year suspended prison term on that charge. He successfully discharged from probation on the three drug charges in the spring of 2008.

In December 2012, Defendant was charged with eight counts of forgery and one count of theft in the third degree. He was initially placed on pretrial release, but a violation of pretrial release was filed after about one month. Defendant was arrested and

3

then released on bond. While those charges were pending, Defendant was arrested three more times and charged with burglary in the third degree, theft in the second degree, two counts of theft in the fifth degree, two counts of forgery, and identity theft. In February 2015, Defendant received 14 suspended prison terms on the various charges. He was on probation on the state court charges at the time of the events which give rise to the instant federal charges.

On June 24, 2015, four days after the execution of the search warrant at Defendant's residence, a violation of probation was filed. According to the report of violation, Defendant had purchased pseudoephedrine on at least 13 occasions, provided 3 urine samples that tested positive for methamphetamine, failed to follow through with substance abuse treatment, and failed to complete community service as ordered. Defendant is also facing state court charges arising out of the same events that give rise to the federal charges. Prior to his arrest on the federal charges, Defendant was being held in state court on a $25,000 cash-only bond.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the

court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of

residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id.* *See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with conspiracy to manufacture methamphetamine and attempted manufacture and aiding and abetting the attempted manufacture of methamphetamine. Accordingly, regarding the first step in the

analysis, the Court finds that detention is authorized pursuant to 18 U.S.C. § 3142(f)(1)(C).

Because there is probable cause to believe Defendant has committed a serious drug offense, there is a rebuttable presumption that he should be detained. The weight of the evidence against Defendant is strong. Defendant is unemployed and does not have a stable residence. Defendant has a history of committing additional crimes while on pretrial release and probation. Defendant was on probation in three separate state court actions (representing 14 counts) at the time of the events giving rise to these charges. The Court has no confidence that Defendant would comply with any terms or conditions which it may impose for his release.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is

confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the motion for detention hearing (September 14, 2015) to the filing of this Ruling (September 21, 2015) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 21st day of September, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA